**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ILSE SANCHEZ and KARLA VELAZQUEZ individually and on behalf of all other persons similarly situated, | ) ) ) | |
| | ) | Case No. 1:23-cv-01028 |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) | Honorable Virginia M. Kendall |
| | ) | Magistrate Judge Susan E. Cox |
| ALEXANDRA LOZANO IMMIGRATION LAW PLLC and ALEXANDRA LOZANO, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

Defendants Alexandra Lozano and Alexandra Lozano Immigration Law PLLC, by and through their attorneys, Jackson Lewis P.C., submit the following Memorandum of Law in Support of their Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4.

**INTRODUCTION**

When Plaintiffs Ilse Sanchez ("Sanchez") and Karla Velazquez ("Velazquez," together with Sanchez, "Plaintiffs") each began working for Alexandra Lozano Immigration Law PLLC ("ALIL" or the "Company"), they and ALIL agreed, in writing, that "any dispute over . . . [their] employment" would be decided in arbitration. *See* Declaration of Christine Andrade ("Andrade Decl."), ¶¶ 6, 10, Exhibit A, ¶ 18, Exhibit B, ¶ 18 (Exhibits A and B collectively, "Arbitration Agreements"). Despite that agreement, Plaintiffs filed a Complaint and Demand for Jury Trial ("Complaint") before this Court alleging, on behalf of themselves and putative classes of similarly situated individuals, that (i) as a condition of their employment, they were forced to enter into non-

competition agreements that are allegedly unlawful under Washington state law (Count I), (ii) Sanchez and others were misclassified as overtime exempt in violation of the Fair Labor Standards Act ("FLSA") (Count II), and (iii) their conversations and communications at work were allegedly recorded without their consent in violation of Washington law (Count III). Complaint ("Compl."), Dkt. No. 1, ¶¶ 18-23, 31, 46-51. These claims fall squarely within the express terms of the parties' executed Arbitration Agreements and can only be pursued in arbitration.

Consistent with the terms of the parties' agreements and well-established case law, Defendants respectfully request that the Court (i) compel Plaintiffs to arbitrate their claims per the parties' agreements; and (ii) dismiss this Action with prejudice pursuant Fed. R. Civ. P. 12(b)(3), or in the alternative, stay these proceedings pending the parties' arbitrations.

## FACTUAL BACKGROUND

On October 14, 2022, Ilse Sanchez entered into a written agreement with ALIL that "any dispute over th[e] Agreement or [Sanchez's] employment" would be decided in arbitration. Andrade Decl. ¶ 7, Ex. A ¶ 18. The agreement lays out the process for selecting an arbitrator, conducting discovery and arbitrating the dispute. *Id*. In all capital letters, the agreement explains that "**THIS MEANS AN ARBITRATOR, NOT JUDGE OR JURY, WILL DECIDE ANY DISPUTE BETWEEN THE PARTIES CONCERNING EMPLOYEE'S EM[P]LOYMENT WITH EMPLOYER.**" *Id*. Sanchez reviewed the agreement and executed it electronically, consenting to its terms. On November 4, 2022, Velazquez reviewed and electronically executed an identical agreement, similarly agreeing to arbitrate "any dispute over th[e] Agreement or [Velazquez's] employment." Andrade Decl. ¶ 11, Ex. B ¶ 18.

On January 9, 2023, ALIL terminated both Plaintiffs' employments after they were observed making disparaging and threatening statements about Defendants and ALIL clients.

2

Andrade Decl. ¶ 12. Plaintiffs filed a Complaint before this Court on February 21, 2023. *See* Complaint, Dkt. No. 1.

ALIL has provided Plaintiffs with copies of their arbitration agreements and counsel for Defendants has discussed Plaintiffs' Arbitration Agreements with Plaintiffs' counsel and requested that Plaintiffs voluntarily dismiss the present suit and proceed with arbitration, consistent with the parties' Agreements. Plaintiffs have refused to do so.

**ARGUMENT**

## I.   **Legal Standard.**

A motion seeking dismissal based on an arbitration clause is best conceptualized as an objection to venue and, thus, properly brought under Rule 12(b)(3). *Young v. Shipt, Inc.*, 2021 U.S. Dist. LEXIS 184847, at *4 (N.D. Ill. Sep. 27, 2021) (internal citation omitted); *see also Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1094 (N.D. Ill. Dec. 28, 2015) (converting defendant's motion to dismiss and to compel arbitration into a motion to dismiss for improper venue under Rule 12(b)(3)).

Generally speaking, motions based on improper venue under Rule 12(b)(3) require the court to assume the truth of the plaintiffs' factual allegations and draw reasonable inferences in her favor – unless the defense offers evidence to the contrary. *Young*, 2021 U.S. Dist. LEXIS 184847, at *4 (citing *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011)); *Bahoor*, 152 F. Supp. 3d at 1094. If evidence is offered and a factual dispute is introduced, the court is not limited to consideration of the pleadings, and the court may consider evidence submitted with the motion without converting it to a summary judgment motion. *Young*, 2021 U.S. Dist. LEXIS 184847, at *4.

## II.    <u>Enforcement of Arbitration Agreements is Mandatory.</u>

Arbitration is mandatory in this case under the FAA. The FAA "reflect[s] both a liberal federal policy favoring arbitration" and "the fundamental principle that arbitration is a matter of contract." *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted). Under the FAA, a court must grant a motion to compel arbitration and dismiss or stay the lawsuit pending arbitration if, as here, (1) there is a written agreement to arbitrate, (2) the dispute is within the scope of the arbitration agreement, and (3) the plaintiff refuses to arbitrate. *See Zurich Am. Ins. Co. v. Watts Indus. Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4); *Young*, 2021 U.S. Dist. LEXIS 184847, at *5. Where a binding arbitration agreement exists, the party opposing arbitration bears the burden of establishing why the arbitration clause should not be enforced. *Young*, 2021 U.S. Dist. LEXIS 184847, at *5; *Bahoor*, 152 F. Supp. 3d at 1097. The FAA also "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. at 1097-98 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Here, Plaintiffs signed valid and enforceable written agreements to arbitrate and their claims fall squarely within the scope of those agreements. Yet, Plaintiffs have refused to proceed in the appropriate forum. Defendants file this motion as a result, respectfully requesting that the Court compel arbitration.

### A.    **The Parties Entered into Valid and Enforceable Agreements to Arbitrate.**

Plaintiffs cannot dispute that their Arbitration Agreements with ALIL are valid and enforceable contracts under well-settled basic contractual principles. *See, e.g.*, *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018) (requiring courts to "rigorously" "enforce arbitration

agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted").

Whether an agreement to arbitrate exists is valid is a matter of state law. *See Johnson v. ORKIN, LLC*, 928 F. Supp. 2d 989, 1003 (N.D. Ill. 2013); *Brown v. Luxottica Retail N. Am., Inc.*, No. 09 C 7816, 2010 U.S. Dist. LEXIS 104642, at \*5 (N.D. Ill. Sept. 29, 2010) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., U.S.*, 130 S. Ct. 1758, 1773 (2010)). Under Illinois law, the basic elements of a contract are: offer, acceptance, and consideration. *Steinberg v. Chi. Med. School*, 69 Ill.2d 320, 329 (1977). The Arbitration Agreements satisfy all three elements. First, ALIL's presentation of the Arbitration Agreements constitutes an offer. *See, e.g.*, *Melena v. Anheuser Bush*, 219 Ill.2d 135, 152 (Ill. 2006) (finding that mailing the dispute resolution documents to employees constituted an offer). Second, Plaintiffs accepted the Company's offer when they electronically signed their respective Agreements. Third, the agreements are mutual and apply to claims asserted by *either* party. Both ALIL and Plaintiffs agreed to arbitrate any claims either party may have concerning Plaintiffs' employment. *See* Andrade Decl. Exs. A and B, ¶ 18. It is well established that a reciprocal arbitration agreement that require both parties to arbitrate their claims against one another constitutes adequate consideration for an enforceable agreement. *See, e.g.*, *Collier v. Real Time Staffing Servs., Inc.*, No. 11 C 6209, 2012 U.S. Dist. LEXIS 50548, at \*7 (N.D. Ill. April 11, 2012) ("a mutual agreement to arbitrate is sufficient" consideration); *see also Truckenbrodt v. First Alliance Mortg. Co.*, No. 96 C 1822, 1996 U.S. Dist. LEXIS 22459, at \*2 (N.D. Ill. July 19, 1996) ("All the consideration that is required for one party's promise to arbitrate is the other party's promise to arbitrate at least some specified class of claims." (internal quotation marks omitted)). As such, there can be no dispute that the parties entered into a valid and enforceable contract when they executed their respective Arbitration Agreements.

**B.**     **Plaintiffs' Claims are Within the Scope of the Arbitration Agreements.**

There is also no dispute that the claims alleged amount to disputes over the terms regarding Plaintiffs' employment and fall within the scope of the parties' Arbitration Agreements. All three of Plaintiffs' claims concern their employment relationship with ALIL: Count I alleges that Plaintiffs were subject to non-compete agreements "as a condition of their employment;" Count II alleges that Sanchez was misclassified as an exempt employee and regularly worked more than 40 hours a week without receiving overtime; and Count III alleges that Plaintiffs were recorded in their office while working for ALIL without their consent. Compl. ¶¶ 18, 32, 46-48. Plaintiffs' claims are within the scope of the Arbitration Agreement.

**C.**     **Plaintiffs Have Refused to Arbitrate Their Claims.**

Defendants provided Plaintiffs with copies of their arbitration agreements. Counsel for defendants have discussed with Plaintiff's counsel that Plaintiffs executed written agreements to arbitrate all legal disputes arising out of their employment. To date, Plaintiffs have not agreed to arbitrate this matter. Accordingly, and for all the reasons discussed more fully above, Defendants respectfully request that the Court enter an order compelling arbitration.

**III.**     **Plaintiffs' Lawsuit Should Be Dismissed or Stayed.**

Although Section 3 of the FAA discusses a stay of litigation, dismissal of all claims subject to arbitration is not inconsistent with this provision. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (when a dispute is subject to arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration"); *see also Faulkenberg v. CB Tax Franchise Systems, LP,* 637 F.3d 801, 812 (7th Cir. 2011) (finding that dismissal was appropriate based upon an arbitration clause in a franchise agreement between the parties); *Lozdoski*, 2009 U.S. Dist. LEXIS 59019, at \*7 (granting

6

the defendant's motion to compel arbitration and dismissing plaintiff's case); *Wylie v. Waste Management, Inc.,* 2010 U.S. Dist. LEXIS 73179, *10 (N.D. Ill. July 21, 2010) (granting motion to dismiss after rejecting argument that plaintiff's claim was outside the scope of the parties' arbitration agreement). Because Plaintiffs' claims are subject to arbitration and Plaintiffs have not complied with their Arbitration Agreements, the Court may – and should – dismiss their claims in their entirety.

"The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *See e.g., Dalope v. United Health Care of Ill.*, No. 03 C 8918, 2004 U.S. Dist. LEXIS 20831, at *6-7 (N.D. Ill. October 8, 2004). Courts have reasoned that "retaining jurisdiction and staying the action will serve no purpose," as "[a]ny post-arbitration remedies sought by the parties would be limited to a judicial review of the arbitrator's award." *Id.*; *see also Hostmark Investors Ltd. v. GEAC Enterprise Solutions, Inc.*, Case No. 01 C 8950, 2002 U.S. Dist. LEXIS 13695, at *10-11 (N.D. Ill. July 19, 2002) ("rather than stay these proceedings pending arbitration, the Court dismisses this case without prejudice"); *Reineke v. Circuit City Stores, Inc.*, No. 03 C 3146, 2004 U.S. Dist. LEXIS 3495, at *14 (N.D. Ill. Mar. 8, 2004) (dismissing plaintiff's complaint where all of the claims raised in plaintiff's complaint were subject to arbitration). The same principles apply here, where all of Plaintiffs' claims are arbitrable and this Court's retention of jurisdiction would serve no purpose. Accordingly, the Court should dismiss this suit without prejudice.

Should the Court decline to dismiss this matter, it should instead stay the claims brought by them pending the outcome of any arbitration. 9 U.S.C. § 3. Section 3 of the FAA specifically requires a stay of proceedings when one party has failed or refused to comply with a valid arbitration agreement and "the issue involved in such suit . . . is referable to arbitration" under the

parties' written agreement. 9 U.S.C. § 3. *See Valentine v. WideOpen West Fin., LLC*, 2012 U.S.

Dist. LEXIS 40396, at *20-21 (N.D. Ill. March 26, 2012) (staying class action lawsuit pending

arbitration because plaintiffs entered into an agreement with defendant with a binding arbitration

clause).

**CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court compel

Plaintiffs to arbitrate pursuant to their binding agreements, dismiss this action with prejudice, or

in the alternative, stay these proceedings while the parties arbitrate their claims, and grant any

further relief deemed just and appropriate.


Dated: May 4, 2023                          **ALEXANDRA LOZANO IMMIGRATION
LAW PLLC and ALEXANDRA LOZANO**


                          By: /s/ Jeffrey L. Rudd
                             One of Defendants' Attorneys

Jeffrey L. Rudd
JACKSON LEWIS P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Facsimile: (312) 787-4995
E-mail: jeffrey.rudd@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

I, Jeffrey L. Rudd, an attorney, certify that on May 4, 2023, I caused a true and correct copy of the foregoing ***Defendants' Memorandum in Support of Their Motion to Compel Arbitration***, to be filed with the Clerk of the Court using the Electronic Filing System, which will send notification of such filing to all counsel of record

_s/  Jeffrey L. Rudd_____
One of Defendants' Attorneys

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ILSE SANCHEZ and KARLA VELAZQUEZ individually and on behalf of all other persons similarly situated, | ) ) ) | |
| | ) | Case No. 1:23-cv-01028 |
| *Plaintiffs*, | ) ) | |
| | ) | Honorable Virginia M. Kendall |
| vs. | ) ) | Magistrate Judge Susan E. Cox |
| ALEXANDRA LOZANO IMMIGRATION LAW PLLC and ALEXANDRA LOZANO, | ) ) ) | |
| *Defendants*. | ) ) | |

## <u>DECLARATION OF CHRISTINE ANDRADE</u>

I, Christine Andrade, declare and state as follows:

1.      My name is Christine Andrade. I am over the age of 18 years and otherwise competent to give testimony. I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I could and would testify to such facts under oath.

2.      I am the HR Manager at Alexandra Lozano Immigration Law PLLC ("ALIL"). I have worked for ALIL for approximately 5 months. My primary responsibilities consist of planning, coordinating, and managing the administrative functions of the HR organization.

3.      As part of my job, I am familiar with and have access to information and personnel records regarding ALIL's current and former employees.

4.      Based on my review of ALIL's records, plaintiff Ilse Sanchez began working for ALIL at its office in Maywood, IL on October 17, 2022.

5.      As a part of the ALIL onboarding, Sanchez was presented with an agreement entitled "Employment Agreement between, the Company (Alexandra Lozano Immigration Law

PLLC), and Employee Ilse Sanchez" ("Sanchez Agreement"). A true and correct copy of the Sanchez Agreement is attached hereto as Exhibit A.

6. Paragraph 18 of the Sanchez Agreement is titled "Arbitration" and states as follows:

> Employee and Company agree that any dispute over this Agreement or Employee's employment will be decided in final binding arbitration before an arbitrator in King County, Washington. The parties agree to first attempt to agree on an arbitrator but if they fail to do so the parties agree to request a list from JAMS or similar service and alternatively strike names. Each party will be allowed discovery as allowed under Washington's Civil Rules, with the arbitrator deciding any discovery dispute. At the close of the arbitration, the arbitrator will issue a written decision that will not be subject to appeal except as allowed under the Federal Arbitration Act. The prevailing party will be awarded attorney fees and costs. **THIS MEANS AN ARBITRATOR, NOT JUDGE OR JURY, WILL DECIDE ANY DISPUTE BETWEEN THE PARTIES CONCERNING EMPLOYEE'S EM[P]LOYMENT WITH EMPLOYER.**

7. Sanchez viewed and electronically signed the Sanchez Agreement through ALIL's Human Resource Platform, Gusto, on October 14, 2022.

8. Based on my review of ALIL's records, plaintiff Karla Velazquez began working for ALIL at its office in Maywood, IL on November 7, 2022.

9. As a part of the ALIL onboarding, Velazquez was presented an agreement entitled "Employment Agreement between, the Company (Alexandra Lozano Immigration Law PLLC), and Employee Karla Velazquez" ("Velazquez Agreement"). A true and correct copy of the Velazquez Agreement is attached hereto as Exhibit B.

10. Paragraph 18 of the Velazquez Agreement is titled "Arbitration" and states as follows:

> Employee and Company agree that any dispute over this Agreement or Employee's employment will be decided in final binding arbitration before an arbitrator in King County, Washington. The parties agree to first attempt to agree on an arbitrator but if they fail to do so the parties agree to request a list from JAMS or similar service and alternatively strike names. Each party will be allowed discovery as allowed under Washington's Civil Rules, with the arbitrator deciding any discovery dispute. At the close of the arbitration,

the arbitrator will issue a written decision that will not be subject to appeal except as allowed under the Federal Arbitration Act. The prevailing party will be awarded attorney fees and costs. **THIS MEANS AN ARBITRATOR, NOT JUDGE OR JURY, WILL DECIDE ANY DISPUTE BETWEEN THE PARTIES CONCERNING EMPLOYEE'S EM[P]LOYMENT WITH EMPLOYER.**

11.     Velazquez viewed and electronically signed the Velazquez Agreement through

ALIL's Human Resource Platform, Gusto, on November 4, 2022.

12.     Sanchez and Velasquez separated employment on January 9, 2023.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct. Executed on this _4th_ day of May, 2023.

# EXHIBIT A

**Employment Agreement between, the Company (Alexandra Lozano Immigration Law PLLC), and Employee_____, entered into this_____day of _____:**

Ilse Sánchez                                                    10/14/2022

1. Recitals: (a) The Company is currently engaged in the business of providing legal services to clients. As a result of Employee's position with the Company, Employee will acquire valuable information, skills, and knowledge relating to the Business and the Company's clients. (b) As an inducement for the Company to continue its employment of Employee and in consideration for Company's payment to Employee of a bonus payment, the Employee enters into this Agreement whereby Employee shall refrain from interfering with the operation of the Company and its Business as specified below.

Therefore, for good and valuable consideration, the Company and the Employee agree as follows:

2. <u>Employee Acknowledgment</u>. Employee acknowledges and agrees that Employee has been given an adequate period of time to consider this Agreement and, if Employee desires, to have this Agreement reviewed at Employee's expense and by an attorney of Employee's choice regarding the terms and legal effect of this Agreement. Employee agrees that Employee understands all this Agreement's terms and conditions and is entering into this Agreement of Employee's own free will and without coercion from any source. Employee has not and is not relying on legal advice provided by the Company or any personnel of the Company.

3. <u>No Conflicting Interests</u>. Employee agrees that Employee will diligently perform Employee's assigned duties and use Employee's best efforts to further the business interests of Company. Employee agrees that, during Employee's employment, Employee will not engage in any activity that conflicts with Company's business interests or that interferes with Employee's ability to devote Employee's full attention to the performance of Employee's duties for Company.

4. <u>At Will Employment</u>. Employee understands and acknowledges that Employee's employment with Company is not for any minimum or specific term, that it is subject to mutual consent by Employee and the Company and is terminable at will. Terminable at will means that either Company or Employee will be free to terminate employment with or without cause, with or without notice, pre-termination warnings/discipline or other pre or post termination procedures of any kind. Employee is not entitled to rely on, and Employee shall not rely on, any verbal statements to the contrary. Employee's at-will status can only be modified by a formal written Employment Agreement specifically rescinding this Employment Agreement.

5. <u>Prior Employers</u>. Employee agrees that Employee's employment with Company will not violate any other contracts or obligations Employee may have to any former employer and/or business for whom

Ilse Sanchez

Employee performed work as an independent contractor. Employee agrees that Employee will honor all such obligations and agrees that Employee has disclosed all obligations and/or agreements to Company.

6. <u>Return of Property</u>. Employee agrees and acknowledges that all materials, equipment and information gained through Employee's employment with Company is the property of Company and agrees that Employee shall not remove any of Company's property from Company's premises. Employee understands that Company's property extends to any information on Company's website (whether or not Employee created the information for placement on the website). Employee agrees and acknowledges that when Employee's employment with Company ends, Employee will return all property of Company.

7. <u>Non-Solicitation</u>. While employed at Company and for two years after Employee's employment ends, Employee will not encourage, induce, attempt to induce or assist another to induce or attempt to induce any current client of Company to terminate client's relationship with Company. Further, while employed at Company and for two years after Employee's employment ends, Employee will not encourage, induce, attempt to induce or assist another to induce or attempt to induce any current employee of Company to terminate employment or independent contractor relationship with Company.

8. <u>Non-Disclosure</u>. Employee acknowledges that, in the course of rendering services to the Company, Employee has acquired "Confidential Information" related to the Company, including, but not limited to, "know how", business practices, marketing practices, training materials and techniques, potential and present customer and client lists, customer records, policy manuals, price lists, business contacts, procedures, plans, methods of doing business, special needs of customers or clients, data, compilations, programs, devices, techniques, financial data, trade secrets, and other confidential information relating to the Company that is not generally known to the public. During Employee's employment for the Company and at all times thereafter, Employee shall not, without the written consent of the Company or except as required by applicable law, disclose to any person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with the performance by Employee of Employee's duties as an Employee of the Company, any confidential information obtained by Employee while in the employ of the Company with respect to the businesses of the Company or any other confidential information the disclosure of which Employee knows, or in the exercise of reasonable care should know, may be damaging to the Company; provided, however, that confidential information shall not include any information known generally to the public (other than as a result of unauthorized disclosure by Employee) or any information so otherwise considered by the Company not to be confidential. Employee acknowledges and understands that Employee's confidentiality obligations extend to Employee's personal use of social medial platforms (including, but not necessarily limited to, Twitter, Facebook and Instagram).

Ilse Sanchez

9. <u>Best efforts.</u> Employee agrees that during Employee's employment with the Company, Employee will devote Employee's best efforts to the performance of Employee's duties and the advancement of the Company and shall not engage in any other employment, profitable activities, or other pursuits which would cause me to disclose or utilize the Company's "Confidential Information" or reflect adversely on the Company. This obligation shall include, but is not limited to, obtaining the Company's consent prior to performing tasks for clients or customers outside of Employee's customary duties for the Company, giving speeches or writing articles, blogs or posts about the business of the Company, improperly using the name of the Company or identifying Employee's association or position with the Company in a manner that reflects unfavorably upon the Company.

10. <u>Non-Disparagement</u>. While employed at the Company and thereafter, Employee shall not communicate negatively about or otherwise disparage the Company or its employees or owners, or its products or services or clients in any way whatsoever, except as may be required for truthful sworn testimony or in connection with a legal or administrative proceeding, report, claim or dispute.

11. <u>Reasonable Restrictions</u>. Employee agrees that the restrictions in paragraphs 7,8, 9 and 10 are reasonable and necessary to protect Company's business interests.

12. <u>Remedies</u>: Employee agrees that any violation of paragraphs 7,8, 9 and 10 will result in immediate and irreparable harm to the Company, and, therefore, agrees that upon any such violation the Company shall be entitled to immediate injunctive relief in addition to any other legal or equitable remedies to which the Company may be entitled. This Agreement is to be construed as separate and independent from all other aspects of the employment relationship and any claim by Employee arising out of such employment relationship or otherwise shall not constitute a defense to the enforcement of this Agreement.

13. <u>Entire Agreement</u>. This Agreement contains the entire agreement of the parties and there are no other promises or condition in any other agreement whether oral or written. This Agreement supersedes and prior written or oral agreements between the parties.

14. <u>Severability</u>. If any provision or provisions of this Agreement are held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

15. <u>Waiver of Contractual Right</u>. The failure of either party to enforce and provision of this Agreement shall bot be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

Ilse Sanchez

16. <u>Binding Effect</u>:  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

17. <u>Amendments</u>:  This Agreement may only be amended or modified by a written instrument executed by both the Employer and the Employee.

**18.** <u>Arbitration.</u> Employee and Company agree that any dispute over this Agreement or Employee's employment will be decided in final binding arbitration before an arbitrator in King County, Washington. The parties agree to first attempt to agree on an arbitrator but if they fail to do so the parties agree to request a list from JAMS or similar service and alternatively strike names. Each party will be allowed discovery as allowed under Washington's Civil Rules, with the arbitrator deciding any discovery dispute. At the close of the arbitration, the arbitrator will issue a written decision that will not be subject to appeal except as allowed under the Federal Arbitration Act. The prevailing party will be awarded attorney fees and costs. **THIS MEANS AN ARBITRATOR, NOT JUDGE OR JURY, WILL DECIDE ANY DISPUTE BETWEEN THE PARTIES CONCERNING EMPLOYEE'S EMLOYMENT WITH EMPLOYER.**

19. <u>Governing Law</u>:  This Agreement will be construed in accordance with and governed by the laws of the State of Washington.

20. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall constitute one and the same agreement.

**IN WITNESS WHEREOF** the parties have duly signed under hand and have executed this AGREEMENT the day and year first written above:

X _Ilse Sanchez_____

  Employee 10/14/2022

Date:_____

X _Monique Espinoza Ramos_____

 On behalf of:  Alexandra Lozano Immigration Law PLLC

Date: 10/14/2022

# EXHIBIT B

**Employment Agreement between, the Company (Alexandra Lozano Immigration Law PLLC), and Employee_____, entered into this_____day of _____:**

Karla Velazquez                                                                11/4/2022

1. Recitals: (a) The Company is currently engaged in the business of providing legal services to clients. As a result of Employee's position with the Company, Employee will acquire valuable information, skills, and knowledge relating to the Business and the Company's clients. (b) As an inducement for the Company to continue its employment of Employee and in consideration for Company's payment to Employee of a bonus payment, the Employee enters into this Agreement whereby Employee shall refrain from interfering with the operation of the Company and its Business as specified below.

Therefore, for good and valuable consideration, the Company and the Employee agree as follows:

2. <u>Employee Acknowledgment</u>. Employee acknowledges and agrees that Employee has been given an adequate period of time to consider this Agreement and, if Employee desires, to have this Agreement reviewed at Employee's expense and by an attorney of Employee's choice regarding the terms and legal effect of this Agreement. Employee agrees that Employee understands all this Agreement's terms and conditions and is entering into this Agreement of Employee's own free will and without coercion from any source. Employee has not and is not relying on legal advice provided by the Company or any personnel of the Company.

3. <u>No Conflicting Interests</u>. Employee agrees that Employee will diligently perform Employee's assigned duties and use Employee's best efforts to further the business interests of Company. Employee agrees that, during Employee's employment, Employee will not engage in any activity that conflicts with Company's business interests or that interferes with Employee's ability to devote Employee's full attention to the performance of Employee's duties for Company.

4. <u>At Will Employment</u>. Employee understands and acknowledges that Employee's employment with Company is not for any minimum or specific term, that it is subject to mutual consent by Employee and the Company and is terminable at will. Terminable at will means that either Company or Employee will be free to terminate employment with or without cause, with or without notice, pre-termination warnings/discipline or other pre or post termination procedures of any kind. Employee is not entitled to rely on, and Employee shall not rely on, any verbal statements to the contrary. Employee's at-will status can only be modified by a formal written Employment Agreement specifically rescinding this Employment Agreement.

5. <u>Prior Employers</u>. Employee agrees that Employee's employment with Company will not violate any other contracts or obligations Employee may have to any former employer and/or business for whom

Karla Vanessa Velazquez

Employee performed work as an independent contractor. Employee agrees that Employee will honor all such obligations and agrees that Employee has disclosed all obligations and/or agreements to Company.

6. <u>Return of Property</u>. Employee agrees and acknowledges that all materials, equipment and information gained through Employee's employment with Company is the property of Company and agrees that Employee shall not remove any of Company's property from Company's premises. Employee understands that Company's property extends to any information on Company's website (whether or not Employee created the information for placement on the website). Employee agrees and acknowledges that when Employee's employment with Company ends, Employee will return all property of Company.

7. <u>Non-Solicitation</u>. While employed at Company and for two years after Employee's employment ends, Employee will not encourage, induce, attempt to induce or assist another to induce or attempt to induce any current client of Company to terminate client's relationship with Company. Further, while employed at Company and for two years after Employee's employment ends, Employee will not encourage, induce, attempt to induce or assist another to induce or attempt to induce any current employee of Company to terminate employment or independent contractor relationship with Company.

8. <u>Non-Disclosure</u>. Employee acknowledges that, in the course of rendering services to the Company, Employee has acquired "Confidential Information" related to the Company, including, but not limited to, "know how", business practices, marketing practices, training materials and techniques, potential and present customer and client lists, customer records, policy manuals, price lists, business contacts, procedures, plans, methods of doing business, special needs of customers or clients, data, compilations, programs, devices, techniques, financial data, trade secrets, and other confidential information relating to the Company that is not generally known to the public. During Employee's employment for the Company and at all times thereafter, Employee shall not, without the written consent of the Company or except as required by applicable law, disclose to any person, other than a person to whom disclosure is reasonably necessary or appropriate in connection with the performance by Employee of Employee's duties as an Employee of the Company, any confidential information obtained by Employee while in the employ of the Company with respect to the businesses of the Company or any other confidential information the disclosure of which Employee knows, or in the exercise of reasonable care should know, may be damaging to the Company; provided, however, that confidential information shall not include any information known generally to the public (other than as a result of unauthorized disclosure by Employee) or any information so otherwise considered by the Company not to be confidential. Employee acknowledges and understands that Employee's confidentiality obligations extend to Employee's personal use of social medial platforms (including, but not necessarily limited to, Twitter, Facebook and Instagram).

Karla Vanessa Velazquez

9. <u>Best efforts.</u> Employee agrees that during Employee's employment with the Company, Employee will devote Employee's best efforts to the performance of Employee's duties and the advancement of the Company and shall not engage in any other employment, profitable activities, or other pursuits which would cause me to disclose or utilize the Company's "Confidential Information" or reflect adversely on the Company. This obligation shall include, but is not limited to, obtaining the Company's consent prior to performing tasks for clients or customers outside of Employee's customary duties for the Company, giving speeches or writing articles, blogs or posts about the business of the Company, improperly using the name of the Company or identifying Employee's association or position with the Company in a manner that reflects unfavorably upon the Company.

10. <u>Non-Disparagement</u>. While employed at the Company and thereafter, Employee shall not communicate negatively about or otherwise disparage the Company or its employees or owners, or its products or services or clients in any way whatsoever, except as may be required for truthful sworn testimony or in connection with a legal or administrative proceeding, report, claim or dispute.

11. <u>Reasonable Restrictions</u>. Employee agrees that the restrictions in paragraphs 7,8, 9 and 10 are reasonable and necessary to protect Company's business interests.

12. <u>Remedies</u>: Employee agrees that any violation of paragraphs 7,8, 9 and 10 will result in immediate and irreparable harm to the Company, and, therefore, agrees that upon any such violation the Company shall be entitled to immediate injunctive relief in addition to any other legal or equitable remedies to which the Company may be entitled. This Agreement is to be construed as separate and independent from all other aspects of the employment relationship and any claim by Employee arising out of such employment relationship or otherwise shall not constitute a defense to the enforcement of this Agreement.

13. <u>Entire Agreement</u>. This Agreement contains the entire agreement of the parties and there are no other promises or condition in any other agreement whether oral or written. This Agreement supersedes and prior written or oral agreements between the parties.

14. <u>Severability</u>. If any provision or provisions of this Agreement are held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

15. <u>Waiver of Contractual Right</u>. The failure of either party to enforce and provision of this Agreement shall bot be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

Karla Vanessa Velazquez

16. <u>Binding Effect</u>:  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

17. <u>Amendments</u>:  This Agreement may only be amended or modified by a written instrument executed by both the Employer and the Employee.

**18.** <u>Arbitration.</u> Employee and Company agree that any dispute over this Agreement or Employee's employment will be decided in final binding arbitration before an arbitrator in King County, Washington. The parties agree to first attempt to agree on an arbitrator but if they fail to do so the parties agree to request a list from JAMS or similar service and alternatively strike names. Each party will be allowed discovery as allowed under Washington's Civil Rules, with the arbitrator deciding any discovery dispute. At the close of the arbitration, the arbitrator will issue a written decision that will not be subject to appeal except as allowed under the Federal Arbitration Act. The prevailing party will be awarded attorney fees and costs. **THIS MEANS AN ARBITRATOR, NOT JUDGE OR JURY, WILL DECIDE ANY DISPUTE BETWEEN THE PARTIES CONCERNING EMPLOYEE'S EMLOYMENT WITH EMPLOYER.**

19. <u>Governing Law</u>:  This Agreement will be construed in accordance with and governed by the laws of the State of Washington.

20. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall constitute one and the same agreement.

**IN WITNESS WHEREOF** the parties have duly signed under hand and have executed this AGREEMENT the day and year first written above:


X_____
  Employee 11/4/2022
Date:_____


X_____
  On behalf of:  Alexandra Lozano Immigration Law PLLC
Date:___11/4/2022_____