**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ILSE SANCHEZ and KARLA VELAZQUEZ, individually and on behalf of and all other persons similarly situated, | ) ) ) ) ) | No. 23 C 1028 |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Judge Virginia M. Kendall |
| ALEXANDRA LOZANO IMMIGRATION LAW PLLC and ALEXANDRA LOZANO, | ) ) ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ilse Sanchez and Karla Velazquez were employees of Defendant Alexandra Lozano Immigration Law PLLC (ALIL), Defendant Alexandra Lozano's law firm. At hiring, Plaintiffs and ALIL agreed to arbitrate any dispute over Plaintiffs' employment. Plaintiffs brought this putative class action alleging violations of Washington state law and the Fair Labor Standards Act. Defendants now move to compel arbitration and dismiss this suit. (Dkt. 17). For the reasons below, the motion is granted as modified.

## BACKGROUND

ALIL, a large immigration law firm based in Washington state, has over 500 employees across its offices in the United States and abroad. (Dkt. 1 ¶ 5). Lozano is the founder and sole manager of ALIL, which is organized as a manager-managed professional limited liability company under Washington state law. (*Id.*; Dkt. 25-1). In late 2022, Plaintiffs joined ALIL as employees at the firm's Maywood, Illinois office. (Dkt. 18 at 10–11). Until Plaintiffs' employment

1

with ALIL ended on January 9, 2023, Velazquez earned $22 per hour, and Sanchez earned $65,000 per year. (Dkt. 1 ¶¶ 7–8; Dkt. 18 at 12).

Upon their hiring, Sanchez and Velazquez each signed a twenty-paragraph Employment Agreement. (*Id.* at 10–12, 14–17, 19–22). The agreement includes the following arbitration clause:

> Employee and Company agree that any dispute over this Agreement or Employee's employment will be decided in final binding arbitration before an arbitrator in King County, Washington. The parties agree to first attempt to agree on an arbitrator but if they fail to do so the parties agree to request a list from JAMS or similar service and alternatively strike names. Each party will be allowed discovery as allowed under Washington's Civil Rules, with the arbitrator deciding any discovery dispute. At the close of the arbitration, the arbitrator will issue a written decision that will not be subject to appeal except as allowed under the Federal Arbitration Act. The prevailing party will be awarded attorney fees and costs. THIS MEANS AN ARBITRATOR, NOT JUDGE OR JURY, WILL DECIDE ANY DISPUTE BETWEEN THE PARTIES CONCERNING EMPLOYEE'S EMLOYMENT [sic] WITH EMPLOYER.

(Dkt. 18 at 17, 22). The Employment Agreement also contains a severability clause:

> If any provision or provisions of this Agreement are held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

(*Id.* at 16, 21).

At the time of their hiring, and "[a]s a condition of employment," Plaintiffs each signed a separate Noncompetition Agreement. (Dkt. 1 ¶ 18; Dkts. 22-1, 22-2). The Noncompetition Agreement contains noncompetition, nonsolicitation, and nondisclosure provisions and applies during employment and for one year afterward. (Dkts. 22-1, 22-2). "[I]n consideration of being employed by [ALIL]," the Noncompetition Agreement provides, "the undersigned employee hereby agrees and acknowledges . . . [t]his agreement shall be binding upon me." (Dkt. 22-1 at 3; Dkt. 22-2 at 3).

2

On February 21, 2023, Plaintiffs sued Defendants on behalf of a putative class, alleging: (1) Defendants required Plaintiffs to sign an unlawful noncompete agreement in violation of Washington statute, RCW 49.62 (Count I); (2) Defendants failed to pay Sanchez overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* (Count II); (3) Defendants recorded Plaintiffs without consent, violating RCW 9.73 (Count III); and (4) Defendants violated RCW 63.60 by infringing Plaintiffs' right of publicity (Count IV). (*Id.* at ¶¶ 13–62).

Separately, before the National Labor Relations Board (NLRB), Plaintiffs brought charges against ALIL under the National Labor Relations Act (NLRA). (Dkt. 22 at 1). In March 2023, the parties executed a settlement term sheet—conditioned on NLRB approval—with terms for resolving the NLRB charges (but excluding the claims in this case). (*Id.* at 2; Dkt. 20-1). According to the term sheet, the parties would attempt mediation before Magistrate Judge Susan Cox. (Dkt. 20-1 at 2). After the parties requested a settlement conference before Magistrate Judge Cox, Defendants changed their minds about mediation. (Dkts. 20). Although Defendants asked Plaintiffs to arbitrate, they refused. (Dkt. 18 at 6). Then, on May 4, 2023, Defendants moved to compel arbitration of the present dispute. (Dkt. 17). A few weeks later, Magistrate Judge Cox denied Plaintiffs' motion to enforce the settlement term sheet, refusing to order Defendants to participate in mediation. (Dkt. 23).

On June 6, 2023, Plaintiffs and ALIL agreed to settle the claims before the NLRB. (Dkt. 30-1). The NLRB approved the settlement agreement two days later. (Dkt. 35-1).[1] Through the

---

[1] On July 18, 2023, Plaintiffs moved for leave to file the approved NLRB settlement agreement as supplemental authority. (Dkt. 35). The fact of the NLRB's approval is helpful to the Court's analysis insofar as it indicates the finality of the parties' agreement to settle the claims in that separate proceeding. Plus, Defendants will suffer no prejudice from the Court's consideration of this additional fact since it does not move the needle in Plaintiffs' favor. *See, e.g., Jacobs, Jr. v. Guardian Life Ins. Co. of Am.*, 730 F. Supp. 2d 830, 844 (N.D. Ill. 2010) (considering supplemental authority that was helpful and nonprejudicial). So Plaintiffs' motion for leave [35] is granted.

NLRB settlement, ALIL agreed not to "maintain or enforce the following unlawfully broad provisions in [the] Employment Agreement, or anywhere else:

> Section 3: No Conflicting Interest
>
> Section 7: Non-Solicitation
>
> Section 8: Non-Disclosure
>
> Section 9: Best Efforts
>
> Section 10: Non-Disparagement
>
> Section 11: Reasonable Restrictions
>
> Section 12: Remedies."

(Dkt. 30-1 at 8; Dkt. 31-1 at 2; Dkt. 35-1 at 19).

Defendants' motion to compel arbitration is now before the Court. (Dkt. 17).

## DISCUSSION

Based on the arbitration agreement, Defendants move to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). Yet, "the doctrine of *forum non conveniens* is the correct procedural mechanism to enforce an arbitration clause." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 701 (7th Cir. 2022) (quoting *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 560 (7th Cir. 2021)) (cleaned up); *see also Dr. Robert*, 7 F.4th at 561 (observing that the procedural vehicle—Rule 12(b)(3) versus *forum non conveniens*—"does not impact the substantive analysis"). To resist arbitration, the nonmoving party "must identify a triable issue of fact concerning the existence of the agreement." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (analogizing to the summary-judgment standard). The Court draws reasonable inferences in favor of the nonmoving party. *Id.*; *accord Jackson v. Payday Fin., LLC*, 764 F.3d

765, 773 (7th Cir. 2014) (citing *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011)).

The Federal Arbitration Act (FAA) reflects a "liberal federal policy favoring arbitration." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The Act "sweeps broadly, 'requiring courts rigorously to enforce arbitration agreements according to their terms.'" *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)) (cleaned up). Courts compel arbitration when "(1) there is a valid agreement to arbitrate; (2) the claims fall within the scope of the agreement; and (3) the opposing party refused to arbitrate." *Rock Hemp*, 51 F.4th at 702 (quoting *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014)).

An arbitration agreement's validity is a matter of state contract law, and here, the parties do not dispute the application of Illinois law. *Faulkenberg*, 637 F.3d at 809 (citing *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005)); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[2] Yet, the FAA preempts any state law which "stands as an obstacle to the accomplishment and execution of [the Act's] full purposes and objectives." *Lamps Plus*, 514 U.S. at 1415 (quoting *Concepcion*, 563 U.S. at 352). The FAA therefore "provides the default rule for resolving certain ambiguities in arbitration agreements." *Id.* at 1418. No matter what state law says, for example, "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."

---

[2] The Employment Agreement's choice-of-law clause provides that Washington law should govern. (Dkt. 18 at 17, 22). But ALIL's briefing relies on Illinois law, (*id.* at 5), and Plaintiffs do not object to interpreting the agreement under Illinois law (Dkt. 22 at 4 n.2). *See Faulkenberg*, 637 F.3d at 809 (applying Illinois law despite Texas choice-of-law provision where neither party requested application of another state's law). Neither have the parties pointed to any outcome-determinative differences between Washington and Illinois law. *See id.*; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 n.14 (7th Cir. 2018).

*Id.* at 1418–19 (citations omitted); *accord Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Plaintiffs do not dispute that they agreed to arbitrate and have since refused to do so. Instead, Plaintiffs oppose arbitration on four grounds, arguing that: (1) Lozano cannot compel arbitration because she is not a party to the agreement; (2) Plaintiffs' challenge to the noncompetition agreement in Count I is beyond the scope of the arbitration clause; (3) the arbitration agreement is unconscionable, and thus, unenforceable; and (4) Defendants waived their right to arbitrate. (Dkt. 22 at 3–11). The Court takes each argument in turn.

## A.      Nonparty Enforcement of the Arbitration Agreement

In general, a nonsignatory to a contract cannot enforce its arbitration clause. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021) (citing *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 755 (Ill. App. Ct. 2000)). But that rule has exceptions, including theories rooted in state-law contract-formation principles. *Id.* (citing *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539–41 (Ill. App. Ct. 2004)). The agency theory, which Defendants invoke here, permits a nonsignatory agent of a signatory to enforce the signatory's arbitration agreement. *Id.* at 640–41. "Under Illinois law, '[a]gency is a consensual, fiduciary relationship between two legal entities created by law.'" *Id.* at 640 (quoting *Ervin*, 812 N.E.2d at 539). Specifically, an agency relationship exists where "[1] the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and [2] the alleged agent can affect the legal relationships of the principal." *Id.* (quoting *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998)); *accord Ervin*, 812 N.E.2d at 539.

Here, Defendants point to Lozano's declaration that she is the sole manager of ALIL, a Washington manager-managed PLLC. (Dkt. 25 at 4; Dkt. 25-1). Under Washington statute, the

"[m]anagement of the activities of [ALIL] is vested in one or more managers." RCW 25.15.154(1)(a). As ALIL's sole manager, Lozano "is an agent of [ALIL] and has the authority to bind [ALIL] with regard to matters in the ordinary course of its activities." RCW 25.15.154(2)(a). The Court finds Defendants' evidence sufficient to satisfy both prongs of the agency test— showing, first, that ALIL has the legal right to control Lozano's work on the law firm's behalf, and second, that Lozano has statutory authority to affect ALIL's legal relationships. *See Sosa*, 8 F.4th at 640; *800 S. Wells Comm. LLC v. Cadden*, 103 N.E.3d 875, 884–86 (Ill. App. Ct. 2018) (looking to Illinois LLC Act, rather than common law, to determine the scope of fiduciary duties belonging to the manager of an Illinois manager-managed LLC); *Kische USA LLC v. Simsek*, 2016 WL 7212534, at *6 (W.D. Wash. Dec. 13, 2016) (relying on Washington statute to conclude that a manager-managed LLC's manager was the LLC's agent).

Plaintiffs make no effort to refute Defendants' demonstration of an agency relationship. By no means have they created a triable issue of fact on agency. Instead, Plaintiffs rely on caselaw interpreting other theories of nonparty arbitration-agreement enforcement. (*See* Dkt. 22 at 4–6).[3] Accordingly, Lozano may invoke the arbitration clause.

## B.    Scope of the Arbitration Agreement

Under Illinois law, parties "are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Liu v. Four Seasons Hotel, Ltd.*, 138 N.E.3d 201, 206 (Ill. App. Ct. 2019) (citing *Royal Indem. Co. v. Chi. Hosp. Risk Pooling Program*, 865 N.E.2d 317, 324 (Ill. App. Ct. 2007)); *accord Faulkenberg*, 637 F.3d at 808–09 ("[T]he FAA's provisions are 'not to be construed so broadly as to include claims that were never intended for arbitration.'" (quoting *Am. United Logistics, Inc. v.*

---

[3] In Plaintiffs' sur-reply opposing Defendants' motion to compel arbitration, Plaintiffs do not respond to Defendants' evidence of the agency relationship between Lozano and ALIL—appearing to concede the issue. (*See* Dkt. 30).

*Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003))). Interpreting a "generic" arbitration clause—which does not specifically designate what disputes are arbitrable—"courts must examine the wording of the arbitration clause, along with the other terms of the contract in which the arbitration clause is found." *Liu*, 138 N.E.3d at 206 (citing *Keeley & Sons, Inc. v. Zurich Am. Ins. Co.*, 947 N.E.2d 876, 881 (Ill. App. Ct. 2011)). For example, an arbitration clause covering disputes "arising out of or relating to" an agreement is broader than a clause that covers only disputes "arising out of" an agreement. *Id.* at 206–07 (citing *Keeley*, 947 N.E.2d at 882–83).

The arbitration clause here extends to "any dispute over [the Employment] Agreement or Employee's employment." (Dkt. 18 at 17, 22). For emphasis (in bold, capital letters), the clause provides that "an arbitrator, not judge or jury, will decide any dispute between the parties concerning Employee's em[p]loyment with Employer." (*Id.* (emphasis omitted)). Plaintiffs contend this language is not broad enough to reach their claim in Count I challenging the separate Noncompetition Agreement under Washington statute. (Dkt. 22 at 6–8). The Court disagrees. By emphasizing that it covers "any dispute . . . *concerning*" Plaintiffs' employment—in addition to "any dispute *over*" Plaintiffs' employment—the clause's language reflects the parties' intent to arbitrate disputes to the full extent of a generic clause. *Cf. Liu*, 138 N.E.3d at 206–07 ("[W]here an arbitration clause contains the phrase 'arising out of [the] agreement' (or a similar phrase), but fails to also include the phrase, 'or relating to [the agreement]' (or a similar phrase), it is narrower than a generic clause . . . ." (citing *Keeley*, 947 N.E.2d at 882–83)). Nor does the clause contain any limiting language. Instead, the language "denotes the full breadth of the types of disputes that can conceivably arise" from Plaintiffs' employment at ALIL. *See Keeley*, 947 N.E.2d at 882 (quotation omitted and cleaned up).

Plaintiffs therefore misplace their reliance on decisions interpreting arbitration clauses limited in scope to disputes over the contract itself. *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (arbitration clause covered "[a]ny dispute arising under this Agreement"); *Perez Bautista v. Juul Lab'ys, Inc.*, 478 F. Supp. 3d 865, 869 (N.D. Cal. 2020) (arbitration clause covered "[a]ll disputes *over the terms of this Agreement*"); *Sorathia v. Fidato Partners, LLC*, 483 F. Supp. 3d 266, 277 (E.D. Pa. 2020) (arbitration provision was "limited to '[a]ny controversy or claim *arising out of or relating to this Agreement*'"). True, Plaintiffs' challenge to the Noncompetition Agreement is not a dispute over the Employment Agreement. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663–64 (7th Cir. 2002) (holding that an agreement to arbitrate "any matter in dispute under or relating to this Agreement" did not cover a claim for breach of a separate acquisition agreement). But the arbitration clause here goes further, reaching "any dispute over" or "concerning" Plaintiffs' employment. That language reaches Count I as alleged.

A glance at Count I's substance drives the point home: Plaintiffs claim the Noncompetition Agreement is unenforceable under RCW 49.62. (Dkt. 1 ¶¶ 13–25). A noncompete agreement is presumptively unenforceable unless: (1) the employer discloses the noncompete agreement's terms "no later than the time of the acceptance of the offer of employment"; (2) the employee earns over $100,000 per year; and (3) the employee was not laid off. RCW 49.62.020; *A Place for Mom v. Perkins*, 475 F. Supp. 3d 1217, 1227 (W.D. Wash. 2020). If the employer meets those three statutory requirements, "the court must still consider whether enforcing the non-compete agreement is reasonable." *A Place for Mom*, 475 F. Supp. At 1227 (citing *Wood v. May*, 438 P.2d 587, 590 (Wash. 1968)). The reasonableness inquiry requires balancing the necessity of the noncompete agreement, its scope, and public policy. *Id.* at 1228 (citing *Emerick v. Cardiac Study*

9

*Ctr., Inc.*, 357 P.3d 696, 701 (Wash. 2015)). Although the Court can imagine a case where a challenge to a noncompete agreement under RCW 49.62 veers into territory beyond a mere dispute over or concerning an employee's employment—perhaps, for instance, where the noncompete agreement's enforceability hinges on the legitimacy of the employer's interest in preventing competition and the employee's post-employment conduct. But this is not such a case.[4]

Plaintiffs allege the Noncompetition Agreement is unenforceable because they "each earned far less than $100,000 per year." (Dkt. 1 ¶¶ 16, 20). Plaintiffs complain further that they signed the Noncompetition Agreement "[a]s a condition of employment" with ALIL. (Dkt. 1 ¶ 18). In the same vein, Plaintiffs agreed to the terms of the Noncompetition Agreement "in consideration of being employed by [ALIL]." (Dkt. 22-1 at 3; Dkt. 22-2 at 3). Contrary to Plaintiffs' contention otherwise, the Noncompetition Agreement, by its terms, applies to both current and former employees. Resolving ambiguities in favor of arbitration, *see Lamps Plus*, 139 S. Ct. at 1418, the claim in Count I—that Defendants conditioned Plaintiffs' employment on their entry into an unlawful noncompete agreement and paid them below the statutory minimum salary—is a dispute over or concerning Plaintiffs' employment. Thus, Count I is arbitrable.

## C.     Unenforceability of the Arbitration Agreement

Plaintiffs fall back on challenging the entire arbitration agreement as unenforceable. (Dkt. 22 at 8–10; Dkt. 30 at 2). In Illinois, an arbitration agreement may be unenforceable if it is substantively or procedurally unconscionable (or both). *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006) (citing *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 409–10 (Ill. 1980)); *Concepcion*, 563 U.S. at 339 (observing that the FAA permits nonenforcement

---

[4] In the parties' joint status report, for example, they agreed that the "principal factual issues" include "[w]hether any member of the putative class earned more than $100,000 annually." (Dkt. 15 ¶ 6). Indeed, the status report indicates that every principal factual and legal issue in this dispute concerns Plaintiffs' employment. (*See id.* at ¶¶ 5–6).

of an unconscionable arbitration agreement). Considering "the relative fairness of the obligations assumed," an agreement is substantively unconscionable where its terms are "so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011) (quoting *Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 267 (Ill. 2006)).

### 1. Unconscionability of the Fee-Shifting Provision

Plaintiffs argue the arbitration clause's fee-shifting provision—awarding attorneys' fees and costs to the prevailing party—is incompatible with federal law, rendering the agreement substantively unconscionable. [5] "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Therefore, "[c]ontractual provisions that conflict with statutory fee-shifting requirements are . . . problematic." *Bain v. Airoom, LLC*, 207 N.E.3d 1015, 1024 (Ill. App. Ct. 2022).

The arbitration agreement's fee-shifting provision could require Plaintiffs to pay attorneys' fees and costs if they lose. In this way, it differs from the fee-shifting scheme under the FLSA, which Sanchez invokes in Count II. The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Since the arbitration agreement could put

---

[5] The parties agree that the Court, rather than an arbitrator, should decide whether the arbitration agreement is unconscionable. (Dkt. 22 at 8–10; Dkt. 25 at 9–11); *see Lamps Plus*, 139 S. Ct. at 1417 n.4; *cf. Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004) (holding that an arbitrator should resolve the validity of an agreement's fee-shifting provision, where the parties had agreed to arbitrate "the validity or enforceability of th[e] arbitration provision or any part thereof" (citations omitted)).

Sanchez on the hook for attorneys' fees, Plaintiffs contend, the arbitration agreement subverts their "ability to vindicate their statutory rights." (Dkt. 22 at 9). As to Sanchez, the Court agrees.[6]

Under Illinois law, a fee-shifting provision is unconscionable if it undermines a fee-shifting scheme central to the statute which the plaintiff invokes. *Brne v. Inspired eLearning*, 2017 WL 4263995, at *4–6 (N.D. Ill. Sept. 26, 2017) (holding that a provision requiring parties to arbitration to pay their own fees was unconscionable because it was inconsistent with the Illinois Wage Payment and Collection Act's fee-shifting scheme); *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 931 (N.D. Ill. 2005) (striking an arbitration agreement's two-way fee-shifting provision as unconscionable because it subverted Title VII's fee-shifting scheme requiring only employers to pay employees' fees); *Bain*, 207 N.E.3d at 1024 (citing *Brne* and *Safranek* with approval); *see also LaCoursiere v. Camwest Dev., Inc.*, 339 P.3d 963, 970 (Wash. 2014) (en banc) (Under Washington law, "mandatory fee-shifting provisions in employment contracts are unconscionable where the legislature authorizes only prevailing employees to collect attorney fees." (citations omitted)).

In enacting the FLSA, Congress aimed to protect workers from poor working conditions. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Furthering that underlying policy, the FLSA's mandatory fee-shifting scheme reflects Congress's intent "to encourage lawyers to take these cases." *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 755 (7th Cir. 2022) (citing 29 U.S.C. § 216(b), and *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 366 (7th Cir. 2000)); *see Barrentine*, 450 U.S. at 740 n.16; *see also Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir. 1944) ("[T]he liability created by Congress for non-payment of

---

[6] Velazquez does not bring a claim under the FLSA, and she does not argue that the fee-shifting provision interferes with her Washington statutory rights, so Plaintiffs have not shown that the fee-shifting provision is unconscionable as applied to Velazquez.

overtime wages and for liquidated damages and attorneys' fees may not be compromised . . . ."). Thus, the fee-shifting scheme is central to the FLSA.

"The FLSA's fee-shifting provision refers only to a prevailing plaintiff . . . and says nothing of a prevailing defendant." *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009). That silence does not displace the common-law rule that prevailing defendants may receive attorneys' fees by showing that the plaintiff acted in bad faith. *EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 883 (7th Cir. 1994) (citing *EEOC v. Kenosha Unified Sch. Dist. No. 1*, 620 F.2d 1220 (7th Cir. 1984)). Absent bad faith, however, § 216(b)'s "emphasis on an award "*to the plaintiffs*" to be paid "*by the defendants*, strongly suggests by negative implication that it precludes awarding fees to a prevailing defendant." *O & G Spring*, 38 F.3d at 882–83; *see also Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139 1148 (10th Cir. 2014) ("[T]he FLSA entitles a prevailing defendant to attorney's fees only where the district court finds that the plaintiff litigated in bad faith." (quoting *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998)) (cleaned up)).

Permitting defendants to recover attorneys' fees after prevailing against good-faith FLSA claims would expose plaintiffs to additional risk—discouraging lawsuits and subverting the statute's purpose. *Cf. Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) ("[A]ssessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII."). Because the arbitration agreement's fee-shifting provision undermines Sanchez's ability to vindicate her rights under the FLSA, it is substantively unconscionable.

13

2.      **Severability**

Although the arbitration agreement's fee-shifting provision is unconscionable as applied to Sanchez's FLSA claim, and seven additional paragraphs of the Employment Agreement are unenforceable, the arbitration agreement remains enforceable. Through the NLRB settlement agreement, Defendants agreed not to enforce seven out of twenty sections of the Employment Agreement—leaving both the arbitration agreement and the severability clause intact. The severability clause provides, in part: "If any provision or provisions of this Agreement are held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable." (Dkt. 18 at 16, 21). Notwithstanding the severability clause, Plaintiffs argue that the seven unenforceable paragraphs spoil the rest of the contract, including arbitration agreement. (Dkt. 30 at 4–7). Not so.

"In determining whether it is appropriate to sever an unconscionable provision from an agreement and enforce the remainder of the agreement, Illinois courts are to consider whether the valid provisions are 'so closely connected with unenforceable provisions that to do so would be tantamount to rewriting the Agreement.'" *Tortoriello v. Gerard Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 179 (Ill. App. Ct. 2008) (quoting *Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812, 823 (Ill. App. Ct. 2005), *aff'd*, 857 N.E.2d 250). Here, the arbitration agreement's effectiveness does not depend on any of the seven paragraphs which the NLRB settlement agreement deemed unenforceable.

The sole unconscionable provision of the arbitration agreement itself is the fee-shifting provision (and only as applied to Sanchez's FLSA claim). As with the unenforceable paragraphs, the efficacy of the arbitration agreement does not hinge on who will pay fees and costs if Sanchez loses under the FLSA. To strike that provision would not rewrite the agreement. *See Kinkel*,

14

828 N.E.2d at 823 (finding an arbitration agreement did not depend on an unenforceable provision barring class relief); *Tortoriello*, 882 N.E.2d at 179–80 ("If the disclaimer of punitive damages is stricken, the intent of the arbitration clause remains essentially fulfilled, for there still exists the broad requirement of arbitration."); *see also, e.g.*, *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015) (finding remedial-limitation provisions severable). Neither the fee-shifting provision nor the seven unenforceable paragraphs of the Employment Agreement is essential to the arbitration agreement. *See Kinkel*, 857 N.E.2d at 277–78. So the Court need not throw out the baby with the bathwater.

Notwithstanding any finding that certain provisions are unenforceable, the severability clause reflects the parties' intent that the Employment Agreement remain in force. This "certainly strengthens the case for the severance of unenforceable provisions." *See Tortoriello*, 882 N.E.2d at 180 (quoting *Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1343 (Ill. App. Ct. 1993)); *Kinkel*, 857 N.E.2d at 277–78. To seal the deal, enforcing the valid portions of the arbitration agreement—the entire arbitration agreement in Velazquez's case—will give effect to the "the strong policy" favoring arbitration. *See Tortoriello*, 882 N.E.2d at 180 (quoting *Kinkel*, 828 N.E.2d at 823–24); *Kinkel*, 857 N.E.2d at 277–78; *see also Wallace*, 970 F.3d at 800.

## D. Waiver of the Right to Arbitrate

Nor have Defendants waived their right to arbitrate. A party to an arbitration agreement may waive its right to compel arbitration by acting inconsistently with that right. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022); *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020). To infer inconsistent action requires "considering the totality of the circumstances." *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018) (quoting *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir.

2011)). Among several factors, "diligence or the lack thereof is particularly important." *Id.* (citing *Kawasaki*, 660 F.3d at 994); *see also Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.* 50 F.3d 388, 391 (7th Cir. 1995) ("[D]id th[e] party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?"). Other relevant factors include "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Smith*, 907 F.3d at 499 (citing *Kawasaki*, 660 F.3d at 994); *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589–91 (7th Cir. 1992).

Here, Defendants moved to compel around three months after this lawsuit began. They made Plaintiffs aware of their intent to arbitrate even earlier. Defendants' conduct suggests diligence in invoking their arbitration right, rather than delay. *See Kawasaki*, 660 F.3d at 996 (holding a two-year delay—during which the defendant participated in separate proceedings before a different court—was not too long). Nor did Defendants participate substantively in this litigation. *See Smith*, 907 F.3d at 499. Before moving to compel, Defendants did not file an answer or other motions or participate in discovery. Nonetheless, in Plaintiffs' view, Defendants acted inconsistently with their right to arbitrate by entering a settlement term sheet (excluding the claims in this case) and then, after compelling arbitration before this Court, agreeing to settle Plaintiffs' separate claims before the NLRB. (Dkt. 22 at 11; Dkt. 30 at 7). But Defendants' actions were not inconsistent with its desire to arbitrate. *See Kawasaki*, 660 F.3d at 995–98 (defendant did not waive arbitration right by submitting briefs in separate proceedings and participating in court-mandated mediation and an appeal).

After Plaintiffs brought charges before the NLRB, Defendants had an obligation to respond. The NLRA gives the NLRB power to prevent unfair labor practices. 29 U.S.C. § 160(a).

16

"This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." *Id.*; *see Lodge 743, Int'l Ass'n of Machinists, AFL-CIO v. United Aircraft Corp.*, 337 F.2d 5, 8 (2d Cir. 1964) ("The standard rule . . . is that the right to resort to the [NLRB] for relief against unfair labor practices cannot be foreclosed by private contract." (collecting cases, including *J.I. Case Co. v. NLRB*, 321 U.S. 332, 336–39 (1944))). Defendants' defense against separate charges before the NLRB—which involved no substantive litigation activity and ended quickly in settlement—was not inconsistent with their intent to arbitrate this dispute. Thus, Defendants did not waive their right to arbitrate.

## CONCLUSION

For the reasons above, ALIL's motion to compel arbitration [17] is granted as modified. The Court compels arbitration of this dispute in its entirety. As to Sanchez only, the fee-shifting provision of the arbitration agreement is stricken as unconscionable. The case is stayed pending arbitration. *See Cont'l Cas.*, 417 F.3d at 732 n.7. The parties shall notify the Court of the disposition of the arbitration.

Virginia M. Kendall
United States District Judge

Date: July 19, 2023

17